

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FAST FOOD GOURMET, INC., a Missouri Corporation | )<br>)<br>) |
| Plaintiff, | ) No. 05 C6022<br>) |
| vs. | )<br>) |
| LITTLE LADY FOODS, INC., an Illinois Corporation, and KRAFT FOODS GLOBAL, INC., a Virginia Corporation, | ) Judge Aspen<br>)<br>) |
| Defendants. | ) Magistrate Judge Cole<br>)<br>) |

**MEMORANDUM OPINION AND ORDER RE: PLAINTIFF'S MOTION TO COMPEL**

**INTRODUCTION**

Fast Food Gourmet, Inc. ("FFGI") sued Little Lady Foods, Inc. ("LLF") and Kraft Foods Global, Inc. ("Kraft") for misappropriation of trade secrets. FFGI additionally sued LLF for breach of contract and Kraft for unjust enrichment. As part of its discovery process, FFGI issued two sets of interrogatories to LLF and Kraft. The defendants argued that certain of the questions posed in the second set of interrogatories were "overbroad, unduly burdensome and not relevant to the claims or defenses of any party." (Kraft's Answer to FFGI's Second Set of Interrogatories at 1; LLF's Answer to Plaintiff's Second Set of Interrogatories at 1). Unable to resolve the dispute, FFGI filed the instant motion to compel. Both defendants responded by reaffirming their previous objections and by claiming that FFGI's motion was untimely as it was filed after the close of fact discovery.

1

# I.
# BACKGROUND

According to the pleadings, FFGI developed, owned and utilized its trade secrets to make a unique stone hearth oven, thin crust, frozen pizza. FFGI contracted with various co-packers who had the facilities and personnel necessary to make the pizzas in bulk. One of these co-packers was LLF, which entered into a preliminary agreement with FFGI pursuant to which it agreed to maintain the confidentiality of the trade secrets and information provided by FFGI. On or about August 23, 2002, the parties entered into a co-packing relationship pursuant to which FFGI moved its unique pizza-making equipment line into LLF's facilities in Elk Grove Village, Illinois, and provided LLF with various FFGI trade secrets including: formulas, recipes, techniques, methods, processes, and specifications used in making its pizzas – particularly the unique stone hearth oven thin crust frozen pizza. The parties agreed that these secrets would be maintained in confidence and would remain proprietary to FFGI, and that LLF would use them for the benefit of FFGI and not for the benefit of any others. (Second Amended Complaint ¶¶ 3-9, 12).

In violation of these obligations, LLF began making Kraft's products on FFGI's equipment, and denied FFGI access to its own equipment or to LLF's manufacturing floor while working with Kraft to develop crusts for Kraft's new pizza line. LLF then acquired stone hearth convection conveyor ovens like the ones utilized by FFGI as well as other equipment either the same or similar to that used by FFGI. LLF installed this equipment in another plant in Gurnee, Illinois, where it began manufacturing pizzas for Kraft using FFGI's methods. Kraft was able to develop its DiGiorno "Thin Crispy Crust Pizza" through LLF. (Second Amended Complaint ¶13-17).

2

On December 1, 2006, FFGI served LLF and Kraft with its second set of interrogatories:

> As to each and every frozen pizza that is (1) marketed by or on behalf of Kraft or any Kraft affiliate under the Delissio name, and (2) baked or par-baked in any oven that has been used or is used for the production of the DiGiorno Thin Crispy Crust Pizza. Please (a) identify the product by name; (b) provide the formula and preparation for the pizza crust (as the terms "formula" and "preparation" are used by Julie Branch in her deposition of October 16, 2006); (c) identify the date on which the product was first produced for sale; and (d) provide sales figures for each calendar or fiscal year, or figures for such portion of any such year that are available. (Second Set of Interrogatories to Kraft, Interrogatory No. 1).

> Please identify by brand name each and every thin crust frozen pizza of which Kraft is aware, whether or not marketed by Kraft or a Kraft affiliate, that is or has been baked or par-baked in any oven that has been or is used for the production of DiGiorno Thin Crispy Crust Pizza. (Second Set of Interrogatories to Kraft, Interrogatory No. 2).

> Please identify by brand name each and every thin crust frozen pizza of which Little Lady is aware, whether or not marketed by Kraft or a Kraft affiliate, that is or has been baked or par-baked in any oven that has been or is used for the production of DiGiorno Thin Crispy Crust Pizza. (Second Set of Interrogatories. to LLF, Interrogatory. No. 1).

In responses filed on January 23, 2007, both defendants objected to these interrogatories on relevancy grounds, claiming that they were not tied to allegations in the complaint. Apparently, as a reflex to the objections, FFGI filed its Second Amended Complaint on February 2, 2007. On February 15, the parties met to discuss the objections. No accord was reached, and nothing more was done regarding the objections prior to the close of fact discovery on March 1, 2007. On April 1, 2007, FFGI submitted its expert reports, including its damage report. On April 13, 2007, six weeks after discovery had closed, FFGI moved to compel responses to the second set of interrogatories.

Although Judge Aspen referred the motion here three days later on April 16th, it was not until May 18th, more than a month later, that FFGI notified the defendants of the presentation of their

3

motion before me. In the interim, FFGI's financial expert was deposed, and the defendants submitted their rebuttal expert report based on this deposition. FFGI presented the instant motion on May 22, 2007.

The defendants' responses reasserted their earlier objection to the relevance of the interrogatories. They argued that FFGI asserted in its Second Amended Complaint that its trade secrets are the combination of unique pieces of equipment and baking techniques and that the interrogatories dealt only with one part of that combination: a stone-hearth conveyor oven. Additionally they claimed that since the only brand mentioned in the Second Amended Complaint was the DiGiorno Thin Crispy Crust Pizza, any interrogatories concerning other brands baked on ovens used to bake DiGiorno pizzas are not relevant to FFGI's claim. Finally, the defendants claimed that the motion to compel was untimely as it was filed over a month after fact discovery was closed and almost three months after FFGI's objections to the interrogatories.

## II.
## DISCUSSION
### A.
### FFGI's Motion To Compel Is Untimely

1.

" 'We live in a world of deadlines.... The practice of law is no exception."
*Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir.2006)

Throughout the range of the law, there are time limits imposed on parties at every stage of the case. Some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to Shakespeare's injunction – "Defer no time delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33 –[1] do so at substantial peril to their

---

[1] The Seventh Circuit is partial to Twelfth Night. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir.1995)("in delays there lies no plenty."). No matter. The point is the same.

4

clients' interests.[2] Even a day's delay can be fatal. *See, e.g., Brosted v. Unum Life Insurance Co. of America*, 421 F.3d 459 (7th Cir.2005); *Raymond*, 442 F.3d at 600; *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir.1996). Although the Federal Rules of Civil Procedure place no prescribed time limit on the outside date for filing a motion to compel discovery – leaving the question of timeliness to the broad discretion of the district court to control discovery – a line of sorts has been etched by a series of decisions: motions to compel filed after the close of discovery are generally deemed untimely. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir.2001); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000)(two month delay with no excuse offered); *Banks v. CBOCS West, Inc.*, 2004 WL 723767 (N.D.Ill. 2004)(Zagel, J.) (lawyer's busy schedule is not a sufficient excuse). *See generally In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 332 (N.D.Ill. 2005); 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure, §2285 (2d ed. 1994).

"But even here the line meanders, and motions made after the close of discovery are not inevitably out-of-bounds. *[citations omitted]*." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 331 n.1. Where the motion is accompanied by a reasonable and persuasive justification for its untimeliness, an extended delay may be excused. *See e.g., Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 235-36 (N.D. Ill. 2000) (a month's delay excused). However, when the movant fails to give a reasonable justification, courts' general aversion to unjustified delays usually result in denials of the motions.

---

[2] The Seventh Circuit has warned that ignoring deadlines is the surest way to lose a case. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994). *See also Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d 1429, 1433 (7th Cir.1996).

5

The cases, it must be said, cannot always be harmonized. But the apparent dissonance is inevitable given the discretionary nature of the decisions: discretion denotes the absence of a hard and fast rule. *Langnes v. Green*, 282 U.S. 531, 541 (1931); *Pruitt v. Mote*, 472 F.3d 484 (7th Cir.2006); *Rogers v. Loether*, 467 F.2d 1110, 1111-1112 (7th Cir.1972) (Stevens, J.), *aff'd sub nom, Curtis v. Loether*, 415 U.S. 189 (1974). Being a continuum not a point, discretion allows two decision makers, on virtually identical facts, to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir .1995) *with United States v. Williams*, 81 F.3d 1434 (7th Cir.1996). It is only when no reasonable person could agree with the district court's conclusion that it can be said that a discretionary choice is abusive. *See Rivera v. City of Chicago*, 469 F.3d 631 (7th Cir.2006).

In the last analysis, where the line is to be drawn between the timely and impermissibly untimely—or, to use Justice Cardozo's observations made in another context--"between the important and the trivial," cannot be settled by a formula. *Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 243, 129 N.E. 889 (1921). *Compare Louisville Gas & Electric v. Coleman*, 277 U.S. 32, 41 (1928)(Holmes, J., dissenting). The answer must necessarily be found in the entire complex of circumstances that gave rise to the motion.

### 2.

FFGI filed the Motion to Compel over a month after fact discovery closed and almost three months after it first received notice of the defendants' objections to the interrogatories in their January 23, 2007 response. These objections were restated and explained at the February 15th conference, after which FFGI still had two full weeks to prepare its motion to compel before fact discovery closed. "Yet, in the face of these consistent refusals, the plaintiffs did not bring a timely

6

motion to compel, although they easily could have done so." *In re Sulfuric acid Antitrust Litigation*, 231 F.R.D. at 339. Even after delaying its motion by more than a month, FFGI waited another month to bring the motion before me.

FFGI has also offered no justification for this delay. Indeed, in its reply brief, FFGI has conceded that the Motion to Compel *could* and *should* have been brought earlier. (*Reply*, at 4). Nonetheless, the Reply urges that I should exercise my discretion in favor of requiring responses to the interrogatories. The reason that is given is that the objections to the interrogatories were improper and the interrogatories themselves were timely filed. But that mode of analysis cannot be right. "An examination of the consequences that would follow upon adoption of the . . . rule proposed by [FFGI]. . . confirms the soundness of this conclusion." *Florida Power & Light Co. v. United States Nuclear Regulatory Commission*, 470 U.S. 729, 741 (1985).

If the plaintiff's argument were accepted, delay in filing a motion to compel would be analytically meaningless, for a court would be forced to determine the validity of the objection before deciding whether the motion's untimeliness precluded analysis of that very question. And if the discovery objections were deemed valid, the untimeliness of the request would be of no consequence because the objector wins on the merits. No cases supports such an obviously incorrect and internally inconsistent mode of analysis.

"Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th Cir.2002). *See also Finwall v. City of Chicago*, 2006 WL 1491316 at *1, *8 (N.D.Ill.2006), *aff'd*, 2006 WL 2355578 (N.D.Ill.2006). Thus, courts routinely deny out-of-time motions to compel that will entail reopening of discovery. To escape the gravitational tug of these

cases, FFGI has represented that it "has no intention of seeking additional discovery, nor of utilizing the results of this discovery to amend its expert disclosures. . . ." (*Reply*, at 5). Despite this assurance, it would seem inevitable that granting FFGI's motion would necessitate a reopening of discovery – and a very substantial one at that.

While FFGI solemnly insists it will not use the information to amend its damage disclosures, it does not say that it will not use the information for some other purpose. Inferences from silence are perilous, Posner, Cardozo: A Study In Reputation, 37 (1990), and so there is a risk in concluding that the promise not to use the information for a specific purpose is also a promise not to use it for any purpose. FFGI must have some use in mind for the information it seeks; if not, the motion to compel is pointless, and the supposed controversy academic only. The difficulty is FFGI has as carefully refrained from explaining the relevance of the information as it has from saying outright that it will not use it for any purpose in the case.[3]

However, if we assume that there is some non-speculative inference that might be drawn from the use of the oven alone, the defendants would be entitled to take additional discovery in order to combat whatever inference FFGI might seek to have the trier of fact draw from that use. Denying the defendants the opportunity to take further discovery to meet the force of that "evidence" would be manifestly unfair and would pose the risks to a fair trial that the Federal Rules of Civil Procedure were designed to eradicate. *See Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964); *United States v. Procter & Gamble Co.*, 356 U.S. 677 682 (1958); *Se-Kure Controls, Inc. v. Vanguard Products Group, Inc.*, 2007 WL 781250 at *1 (N.D.Ill. 2007)(collecting cases). Thus, it is quite beside the point that FFGI pledges not to take additional discovery. The inescapable fact

---

[3] While FFGI has said the information is relevant within the meaning of Rule 26 because it might lead to the discovery of admissible evidence, in the next breath it insists that it seeks no further discovery.

8

remains that if the motion were granted, potentially extensive, additional discovery would be required. If discovery remained closed and the defendants had explanatory evidence they sought to use at trial to combat whatever inferences might flow from the evidence sought by the interrogatories they would be met with the objection from FFGI that the evidence was out-of-bounds because it had not been disclosed prior to trial: "Heads I win, tails you lose." The unfairness of such a result to the defendants is obvious.

In short, if the evidence has no utility, the motion should be denied. If it has utility, granting the motion would require a substantial expansion of discovery. Since FFGI has offered no explanation either for the lateness of the motion or for the relevance of the information it seeks, the motion ought not be granted.

## B.
### The Information Sought By The Interrogatories, While "Relevant" Within The Meaning Of Rule 26, Is Ultimately Not Relevant Given The Plaintiff's Intention Not To Use The Information

Rule 26(b) requires that the discovery be "relevant to the claim or defense of any party." The evidence need not be itself admissible so long as it might lead to the discovery of admissible evidence. Contrary to the defendants' contention, the information sought in the interrogatories plainly fits that definition, which is perhaps even more expansive than that under Rule 401, Federal Rules of Evidence. *Johnson v. Jung*, 2007 WL 1373181 at *2 (N.D.Ill. 2007)(collecting cases). Hence, information about other customers whose products were prepared by the defendants utilizing an oven that has been used for the production of DiGiorno Thin Crispy Crust Pizza could lead to further revelations that other aspects or components of the claimed trade secret were also employed. But to obtain that additional evidence, FFGI would have to take additional discovery, which it has

9

said unequivocally it will not do. (Reply at 5).

There is no evidentiary value – at least none that the plaintiff has attempted to explain – in the information sought by the interrogatories, *standing alone*. Where, as here, a party defines its trade secret as a combination of several factors or elements, a party cannot demonstrate misappropriation simply by showing that the defendant used only part of the combination comprising the secret.[4] FFGI has been adamant that its trade secret is comprised of various elements. For example, on June 23, 2006, FFGI served a verified document entitled "Plaintiff's Identification of Trade Secrets" in response to a court order compelling it to specifically identify the trade secrets it alleged were misappropriated by the defendants. FFGI stated that its method for preparing thin-crust frozen pizzas created a crust that is crispy on the bottom while soft and tender on the inside. It also stated that this product was the result of a combination of four core components: two techniques (thin dough sheeting and an exceptionally high baking temperature), and two pieces of equipment (a Rheon stress-free dough sheeting system and automated pre-sheeter and a stone hearth conveyor oven).

It is the process through which these individual components are utilized that constitutes FFGI's trade secret. The absence of any of these particular components would fail to produce the kind of pizza that is the end result of its trade secret. The oven does not produce these kinds of pizzas absent the sheeting equipment and employment of the proper sheeting and baking techniques, as FFGI's president, Dave Heggestad, conceded in his deposition on February 19, 2007. Mr.

---

[4] *See Computer Care v. Service Sys. Enter., Inc.*, 982 F.2d 1063, 1074 (7th Cir. 1992) ("'A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret.'"); *Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108 (8th Cir. 1997); *Thermodyne Food Services Products, Inc. v. McDonald's Corp.*, 940 F.Supp. 1300, 1304-05 (N.D. Ill. 1996);

Heggestad testified that it was not FFGI's position that LLF was prohibited from using a brick or stone oven or Rheon's stress-free sheeting lines, either individually or in conjunction with each other. (Heggestad Deposition, Vol. 1 at 156). Thus, the fact that pizzas for other customers were baked in the same oven as FFGI's pizza would not, *standing alone*, tend to support FFGI's claims.

This analysis is confirmed by FFGI's June 2, 2007 Opposition To The Defendants' Motion To Bar Pursuant To Rule 37. There, FFGI chided the defendants for their tactical attempt to atomistically view its trade secret: "This [FFGI said] is a common strategy by trade secret defendants, to focus solely on discrete components of what in combination constitutes a trade secret." (*Id.* at 1, n.1). FFGI emphasized the constituent nature of its trade secret both in its pleadings and in discovery.

With regard to the pleadings, the plaintiff cited the following from Judge Aspen's ruling on the defendants' motion for a more definite statement:

> "Little Lady and Kraft argue that Fast Food has not adequately identified its trade secrets. We disagree... The information at issue includes 'specifications for dough-sheeting equipment, for a stone hearth convection conveyor oven and for various other pieces of equipment and methods' used to make Stillwell's Stone Fired Pizza and instructions on 'how to mix the ingredients, how to prepare and sheet the pizza dough, and how to set and utilize the pizza-making equipment line' that Fast Food supplied to Little Lady's facility." (Compl. ¶¶ 9-10).

Mem. Order and Opinion of April 6, 2006.

Judge Aspen held, and FFGI clearly agreed, that the pleadings identified the trade secret as the combination of the equipment, techniques, and instructions used to create the particular crust used in Stillwell's Stone Fired Pizza. FFGI then discussed how it remained true to this definition of its trade secret in discovery. It argued that the defendants were incorrect in phrasing their discovery in a way that sought to isolate each particular technique and piece of equipment as a

11

separate and discrete trade secret. In response to these questions, the plaintiff indicated that it was not claiming that any of those discrete items was a trade secret and that it was the combination of those things that constituted the misappropriated trade secret. ((Plaintiff's Opposition To Defendants' Motion to Bar, 4).

In short, FFGI has maintained throughout the litigation that its crust-making process was the result of the combination of the various equipment and techniques mentioned throughout the complaint and the separate identification of trade secrets documents.[5] Consequently, responses to the interrogatories that are the subject of the instant motion would, *standing alone*, prove nothing. If the discovery sought is not to be used for damage purposes, or as the basis for further discovery, of what value is it, and how can denying the motion result in the kind of "actual and substantial prejudice" that FFGI must show will result from the denial of discovery? *Packman*, 267 F.3d at 647. The answer is obvious and dooms the motion. And as discussed earlier, if there were some non-speculative inference to be drawn from the use of the oven alone the defendants would be entitled to take additional discovery. *See supra* at 8. That is a sufficient basis for deeming the motion impermissibly untimely.

## CONCLUSION

Being solely responsible for the unexplained untimeliness of the Motion to Compel, FFGI cannot be heard to complain of the situation of which it is the efficient cause. *Cf. R.H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934); *United States v. Goodwin*, 449 F.3d 766, 772 (7th Cir. 2006)(Posner, J.). Given FFGI's assurance that it will not use the information sought to amend its

---

[5] Even if FFGI were inclined to retreat from the position it has consistently taken – and there is no suggestion that it intends to do so – the doctrine of judicial estoppel would preclude the endeavor. *See Urbania v. Central States, Southeast and Southwest Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir.2005); *United States v. Hook*, 195 F.3d 299, 306 (7th Cir.1999).

damage disclosures, discovery of the information sought by the interrogatories would not appear to advance the plaintiff's case. If the information has evidentiary significance standing alone – and FFGI's briefs are tellingly silent on this question – the defendants would be entitled to take further discovery and would be required to supplement prior disclosures, which would require further discovery by FFGI. That would dilate the proceedings and affect Judge Aspen's schedule for the filing of dispositive motions.

For the foregoing reasons, FFGI's motion to compel [#124] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 6/8/07