

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **FAST FOOD GOURMET, INC.,** | ) | |
| **a Missouri Corporation** | ) | |
| | ) | **No. 05 C6022** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Judge Aspen** |
| **LITTLE LADY FOODS, INC., an Illinois** | ) | |
| **Corporation, and KRAFT FOODS GLOBAL,** | ) | **Magistrate Judge Cole** |
| **INC., a Virginia Corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER RE: DEFENDANTS' MOTION TO BAR CERTAIN EVIDENCE PURSUANT TO RULE 37

### INTRODUCTION

Fast Food Gourmet, Inc. ("FFGI") sued Little Lady Foods, Inc. ("LLFI") and Kraft Foods

Global, Inc. ("Kraft") for misappropriation of trade secrets. FFGI additionally sued LLFI for breach

of contract and Kraft for unjust enrichment. FFGI made several representations in its pleadings and

during discovery as to what constituted the allegedly misappropriated trade secrets. Toward the end

of discovery, FFGI was granted leave to amend its complaint. Thereafter, the defendants proposed

interrogatories concerning the amendment. Based upon FFGI's responses to these interrogatories,

the defendants believed that FFGI was trying to alter its definition of its trade secrets from one

consisting of a combination of four components that were identified during discovery to one

consisting of the combination of ten components, six of which the defendants claimed were not.

Claiming surprise, the defendants have moved to bar any evidence pertaining to these

additional factors in support of the plaintiff's trade secrets claims, because the plaintiff had not

timely amended or supplemented its previously made identification of its trade secrets as required by Rule 26(e).

## I.

## FACTUAL BACKGROUND

According to the pleadings, FFGI developed, owned and utilized its trade secrets to make a unique stone hearth oven, thin crust, frozen pizza. FFGI contracted with various co-packers who had the facilities and personnel necessary to make the pizzas in bulk. One of these co-packers was LLFI, which entered into a preliminary agreement with FFGI pursuant to which it agreed to maintain the confidentiality of the trade secrets and proprietary information provided by FFGI. In August 2002, the parties entered into a co-packing relationship pursuant to which FFGI moved its unique pizza-making equipment line into LLFI's facilities in Elk Grove Village and provided it with various FFGI trade secrets, including: formulas, recipes, techniques, methods, processes, and specifications used in making its pizzas. The parties agreed that these secrets would be maintained in confidence and as proprietary to FFGI, and that LLFI would use them for the benefit of FFGI and not for the benefit of any others. (Second Amended Complaint ¶¶3-4, 6-9, 12).

In alleged violation of these obligations, LLFI began making Kraft's products on FFGI's equipment and denied FFGI access to its own equipment or to LLFI's manufacturing floor while working with Kraft to develop crusts for Kraft's new pizza line. LLFI then acquired stone hearth convection conveyor ovens like the ones utilized by FFGI as well as other equipment either the same or similar to that used by FFGI. LLFI installed this equipment in another plant in Gurnee, Illinois, and as a consequence, Kraft was able to develop its DiGiorno "Thin Crispy Crust Pizza" through LLFI. (Second Amended Complaint ¶13-17).

2

FFGI filed suit, alleging misappropriation of trade secrets against LLFI and Kraft, breach of contract against LLFI and unjust enrichment against Kraft. From the beginning of the case, there was a dispute as to what exactly were the trade secrets that FFGI was claiming were misappropriated. The complaint stated that "FFGI's trade secrets consisted of, individually and/or in combination, unique equipment, specifications, processes, formulations and techniques used in making the pizza crust." The defendants' Rule 12(e) motion for a more definite statement was denied by Judge Aspen on April 6, 2006.

Shortly thereafter, LLFI propounded a comprehensive interrogatory that sought identification of every facet of the trade secrets. In its answer, FFGI stated that it did not "contend that any piece of equipment... individual 'specification'... 'process'... 'formulation'... or method in its own right, constitutes a trade secret." The answer went on to say that "substantially all of the specifications for FFGI's product are contained in written directions," which were contained in approximately thirty-one documents that were itemized in the answer. (*See Motion to Bar*, Ex. H at 2). *See infra* at 8, *et seq*.

About a month later, the defendants filed a motion to compel the "specific identification" of plaintiff's trade secrets, specifically noting their inability to ascertain from the documents the precise trade secrets. Judge Aspen referred the motion here. Plaintiff's counsel claimed that he needed to see documents detailing what information LLFI gave to Kraft and what new practices Kraft adopted after entering its relationship with LLFI before identifying what trade secrets LLFI and Kraft misappropriated. The defendants argued that pre-screening of the defendants' documents was unnecessary since "the plaintiff more than anybody should know what was stolen."

On May 25, 2006, I denied the plaintiff's motion to compel discovery and granted the defendants' motion "to compel the *specific* identification of the trade secrets." (*Opposition to Motion to Bar*, Ex. 2)(Emphasis supplied). FFGI purportedly complied with this order a month later by submitting a three-page document appropriately captioned, "Plaintiff's Identification Of Trade Secrets." It stated that "FFGI developed a method for preparing thin-crust frozen pizzas that resulted in an artisan-style crust of a quality not otherwise achievable in the world of frozen pizzas, a crust that is crispy on the bottom, while soft and tender inside." "The core components that allowed FFGI to achieve this result came from a combination of the following: (A) Stress-free sheeting and pre-sheeting ... (B) Thin Dough Sheeting ... (C) Exceptionally High Baking Temperature ... (D) The Stone-Hearth Oven." Following each itemization was an explanation of that particular component. (*Motion to Bar*, Ex. A).

Apparently satisfied with the adequacy of this response – a response which the defendants properly could have read as eliminating as part of the trade secrets all specifications and procedures other than those listed in the response – the defendants made no further application for compliance with my order. On December 12, 2006, five months after the filing of "Plaintiff's Identification Of Trade Secrets" and about two and a half months before fact discovery was to close on March 1, the defendants deposed Mr. Kenneth Crouse, FFGI's Vice President of Operations. He was asked whether "Plaintiff's Identification of Trade Secrets" was "a complete and accurate description of the trade secrets that are at issue in this matter." He responded, yes. (*Crouse Deposition* at 10).

However, later in the deposition, in response to the question of whether there was anything about the stress-free sheeting and pre-sheeting that was identified in Plaintiff's Identification of Trade Secrets that had not yet been spoken about, Mr. Crouse said that there were a number of

4

accompanying techniques associated with it that made a significant difference in the integrity of the finished product that had not yet been discussed. When asked, "you are not claiming that any of these accompanying techniques were trade secrets that were misappropriated by Little Lady Foods and Kraft, correct?", Mr. Crouse responded, "no, I would have to differ with that statement." (*Crouse Deposition* at 59). He explained that although "Plaintiff's Identification Of Trade Secrets" was "accurate," it was "not necessarily complete" (*Crouse Deposition* at 61). When asked to list "every single process, technique, and anything else that is missing from [Plaintiff's Identification Of Trade Secrets]," Mr. Crouse specified floor time, temperature, use of ice and the absence of dough conditioners. (*Crouse Deposition*, at 61). These, he said, were four components of the "stress-free sheeting" component of the trade secrets referred to as paragraph A in "Plaintiff Identification Of Trade Secrets." He said that:

> "[T]he stress-free process as identified in [Plaintiff's Identification Of Trade Secrets]... is a *generalization* of our trade secret which was stolen from us... At the time that this document was prepared... it appeared sufficient to state (A) stress-free sheeting and pre-sheeting as we did. After careful consideration of the case and more information was made available, I realized that there were *other areas that had been used, stolen, breached from Fast Food Gourmet that perhaps might have been included in (A)*."

(*Crouse Deposition* at 59)(Emphasis supplied).

Mr. Crouse said that the dough requires 90 minutes of floor time (time to relax and rest after being mixed) at a temperature of 68-72 degrees Fahrenheit. To achieve this desired temperature, FFGI places ice in its dough. He claimed that Kraft started to remove or stop using all dough conditioners at the same time it started working with LLFI. According to Mr. Crouse, prior to its relationship with LLFI, Kraft always used some dough conditioners and had never incorporated floor time or ice when making its dough. When asked whether the trade secret is the temperature or the

5

fact that ice was introduced into the dough, Mr. Crouse answered: "Well, I would say one goes with the other, sir." (*See Crouse Deposition* at 61-66.).

At the conclusion of this segment of testimony, defendants' counsel asked Mr. Crouse:

"So besides what you have just testified to: Floor time, the fact that 90 minutes was the floor time, the temperature of the dough, the introduction of ice in the dough, and the removal of dough conditioners, *those are the trade secrets you now want to add to your claim of what Little Lady Foods and Kraft misappropriated, is that correct?*"

*(Crouse Deposition* at 68)(Emphasis supplied).

To which Mr. Crouse responded that he "would call them factors relating to (A) stress-free sheeting and pre-sheeting." *Id.* During the deposition, Mr. Crouse discussed in detail what stress-free sheeting was and what it consisted of. (*Crouse Deposition* at 10-12, 31-35, 58-59, 61-68, 80).

Despite Mr. Crouse's insistence that these additional components were subparts of the stress-free sheeting identified in ¶A of "Plaintiff's Identification Of Trade Secrets" and that all in conjunction and combination with the other factors listed in that document constituted FFGI's trade secrets, defendants' counsel persisted in asking whether the four components of stress-free sheeting were *the trade secrets that were being claimed in the case*. Mr. Crouse answered no. (*Crouse Deposition* at 68-70). [1]

On January 16, 2007, FFGI filed its Motion to File Second Amended Complaint, Paragraph 13 of which explained the need for the amendment:

"*This proposed amendment serves one purpose only...*[to] make[ ] clear that this alleged contractual violation gives rise to *a claim for breach independent of the existence of trade secrets*." (Emphasis supplied)

---

[1] Mr. Crouse did not vary in his claim that the trade secrets were a combination of factors. (Crouse Deposition at 80-81, 100-101, 108-109). He discussed in detail each of the remaining components listed in "Plaintiff's Identification of Trade Secrets." (Crouse Deposition at 93-95, 100, 117-120).

6

(*Plaintiff's Motion to File Second Amended Complaint* ¶3).

Only three changes were made in the Second Amended Complaint. Instead of alleging that LLFI began making pizzas for Kraft utilizing FFGI's "trade secrets," ¶¶14 and 16 now alleged that LLFI concealed the improper use of FFGI's "crust-making methodology" and began making pizzas for Kraft utilizing FFGI's "crust-making methodology." Additionally, the Second Amended Complaint added ¶38, which alleged that "Little Lady further breached its agreement not to produce pizzas with specifications that were, in the aggregate, substantially identical to FFGI's pizzas, by producing pizzas with nearly identical crusts for Kraft." (*Id.*). Judge Aspen granted the motion over the defendants' objection, and the Second Amended Complaint was filed on February 2, 2007.

Shortly thereafter, the defendants propounded interrogatories in response to the changes. FFGI did not respond until April 27, 2007, almost two months *after* fact discovery had closed on March 1. In response to Interrogatory Number 2, which asked the plaintiff to identify each and every aspect of FFGI's "crust-making methodology," the plaintiff stated that it consisted of:

"(a) utilization of ice in the dough formula; (b) targeting a post-mixture temperature specification of 68-72 degrees Fahrenheit; (c) ambient floor time of 90-120 minutes; (d) placing portions of dough into covered, oiled tubs or troughs; (e) elimination of artificial dough conditioners; (f) oven temperature of approximately 750 degrees Fahrenheit; (g) crust density (2 to 2.3 g/sq. in.); (h) use of stress-free (low stress) sheeting equipment; (i) utilization of stone hearth conveyor impingement oven; (j) water absorption bakers percentage of 58-62 percent."

(*Motion to Bar*, Ex. D at 2).

Components (f), (g), (h), and (i) were the four elements mentioned in "Plaintiff's Identification Of Trade Secrets." Of the six remaining components of FFGI's "crust- making methodology," components (a), (b), (c) and (e) were identified by Mr. Crouse in his deposition in December, 2006. These components were also mentioned in the documents produced in 2006

pursuant to Rule 33(d)(1). Items (d) and (j) had not been mentioned by Mr. Crouse at his deposition, although item (d) was adverted to in some of plaintiff's Rule 33 documents.

Below is a chart which lists those documents in which ice, floor time, no dough drugs, mixing temperature and oiled tubs are referred to:

| ICE | FLOOR TIME | NO DRUGS | TEMPERATURE | OILED TUBS |
|---|---|---|---|---|
| | A- 00202 | A- 00202 | A- 00202 | A- 00202 |
| B- 04207 | B- 04207 | | B- 04207 | B- 04207 |
| | | | H- 00136 | |
| I- 00132-33 | I- 00133 | | I- 00133 | |
| R- 00108 | R- 00108 | | R- 00108 | |
| | S- 03112 | | S- 03112 | |
| T- 00105 | T- 00105 | | | T- 00105 |
| U- 00017 | | | U- 00017 | U- 00018 |
| V- 00076 | V- 00076 | | | V- 00076 |
| W- 00085 | W- 00084 | | W- 00084 | W- 00084 |
| Z- 00076, 79 | Z- 00076, 80 | | Z- 00080 | Z- 00076, 80 |
| AA- 00072 | AA- 00072 | | AA- 00072 | |
| BB- 00066 | BB- 00066, 68 | | BB- 00066 | BB- 00068 |
| | CC- 02875 | | CC- 02875 | CC- 02875 [2] |

By letter dated April 11th, the defendants' counsel complained that FFGI's answers to Kraft's interrogatories were an impermissible and insidious attempt to expand the identification of the trade secrets after discovery had closed. (*Motion to Bar*, Ex. F). The letter asked that FFGI amend its responses to make clear that it claims nothing more as trade secrets and proprietary information than what was set forth in "Plaintiff's Identification Of Trade Secrets." Another letter followed on April 19 asking FFGI to stipulate that it does not contend and will not offer evidence that the use of ice

---

[2] The documents were provided at my request following the briefing on the Motion to Bar. The Motion to Bar did not analyze the specific documents. The plaintiff's Opposition only discussed one document, which was attached as Exhibit 5 and consisted of six pages. (*Id.* at 11). That document was listed near the bottom of the second page of the itemization of the documents that had been provided pursuant to Rule 33(d). Five additional documents were listed below it. (*See Motion to Bar*, Ex. H).

in the dough mixture, targeting a post-mixture temperature of 68-72 degrees, ambient floor time of 90-120 minutes, placing 15 lb. dough portions in oiled plastic tubs and targeting water absorption bakers' percentage of 58-62% "are trade secrets under the Illinois Trade Secrets Act." (*Motion to Bar*, Ex. F).

According to the Motion to Bar, this offer was rejected even though this stipulation would have allowed FFGI to use the additional components in its breach of contract claim, which, the defendants, asserted was the only reason the plaintiff proffered for making the amendments to its complaint.

The defendants subsequently filed the instant motion seeking to bar FFGI from offering evidence that it has any trade secrets other than those identified in "Plaintiff's Identification of Trade Secrets." The motion also sought an award of attorneys' fees.

## II.
## DISCUSSION
### A.

**In Addition To The Four Components Itemized In "Plaintiff's Identification Of Trade Secrets," Four Additional Components Were Otherwise Made Known During Discovery To The Defendants In A Manner That Satisfied Rule 26(e)**

It is the defendants' contention that since FFGI did not supplement "Plaintiff's Identification Of Trade Secrets," it should be barred from using (in summary judgment proceedings or at trial) any evidence relating to any component of its trade secrets that was not explicitly itemized in that document. FFGI's rejoinder that Judge Aspen's denial of the motion for a more definite statement demonstrates that FFGI's trade secrets have been sufficiently explicated from the time the complaint was filed – and thus no supplementation of any kind was required – is not persuasive.

Judge Aspen's opinion neither held nor suggested that the complaint adequately set forth the trade secrets in the sense that any further inquiry in discovery would be superfluous. Rather, the denial of the motion was based solely on the principle that "[m]otions for a more definite statement are generally disfavored, and are usually granted only when the pleading is so unintelligible that movant cannot draft a response." *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2006 WL 1460461 at *1 (N.D.Ill. 2006). Judge Aspen's discretionary decision concluding that the complaint was not so deficient as to preclude the defendants from being able to respond intelligently was consistent with the regime of liberal pleading established by Rule 8(a), which relies so significantly on discovery. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Mitchell v. E-Z Way Towers*, 269 F.2d 126, 130 (5th Cir 1959); *Mullins v. I.C. System Inc.*, 2007 WL 1795871 at * 2 (D. Colo. 2007). *Cf. Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.* 2007 WL 1175577, *2 (N.D.Ill., 2007)(Aspen, J.)(discussing Rule 12(b)(6)). *Compare Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-66 (2007).

But that decision did not mean that the trade secrets were sufficiently explicated for all purposes. Ultimately, a "plaintiff must do more than direct the court to a broad area of technology and assert that something there must have been secret and misappropriated. The plaintiff must point to concrete secrets." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992). *See also Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595 n. 2 (7th Cir. 2001); *Compuware Corp. v. Health Care Service Corp.*, 2002 WL 485710 at * 7 (N.D.Ill. 2002). Since the complaint did not do that, and since discovery had not, according to the defendants, done

so either, I granted the defendants' motion to compel "the specific identification of the trade secrets." (*Opposition to Motion to Bar*, Ex. 2).[3]

Unfortunately, as Mr. Crouse's deposition revealed, FFGI's response to that order was underinclusive and failed to list four components of "stress-free sheeting and pre-sheeting" – utilization of ice in the dough formula, targeting a post-mixture temperature specification of 68-72 degrees Fahrenheit, ambient floor time of 90-120 minutes, and elimination of artificial dough conditioners. *See supra* at 5-6. The validity of the defendants' motion to bar this evidence turns on Rule 26(e), which requires supplementation of prior responses in discovery if the answering party learns that the response is incomplete or incorrect "*and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*" Rule 26(e)(2) (Emphasis supplied).

"There is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition." 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2049.1, p. 604 (2d ed. 1994). *See also Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004); *U.S. v. Dunn*, 2007 WL 1100754, *5 (N.D.Ill. 2007). Nonetheless, the defendants insist that Mr. Crouse's testimony does not satisfy the "otherwise made known" provision of Rule 26 because he denied that these components were a part of its trade secrets. (*Motion to Bar* at 11). Had that been Mr. Crouse's testimony, the Motion would have merit. But that is not what he said.

---

[3] While I did not explicitly find that the plaintiff's 2006 interrogatory responses "were in any way infirm," (*Opposition to Motion to Bar* at 4), there was necessarily an implicit rejection of FFGI's contention that its responses were sufficient.

Despite the fact that Mr. Crouse repeatedly insisted that these additional components were subparts of stress-free sheeting, and that in conjunction with the other components in paragraphs B-D of "Plaintiff's Identification Of Trade Secrets," they constituted the trade secrets, (*Crouse* Deposition 61), defendants' counsel asked whether the four sub-components were *the trade secrets that were being claimed in the case*. (*Crouse Deposition* at 68). Mr. Crouse, perceiving the import of the question, was understandably reluctant to answer. (*Crouse Deposition* at 69). When defendants' counsel insisted on an answer, Mr. Crouse quite properly answered no. In light of the multiple components listed in the "Plaintiff's Identification Of Trade Secrets," he could hardly have said yes. In any event, satisfied with the answer, the deposition was interrupted for lunch. (*Crouse Deposition* at 70-71)("Okay. That's it. Thank you.").[4]

The exchange between Mr. Crouse and the defendants' counsel proved only that a wrong question is not likely to beget a right answer. *In re Sawyer,* 360 U.S. 622, 649 (1959)(Frankfurter, J., dissenting). From the beginning of the case, and throughout the Crouse deposition, FFGI had asserted that its trade secrets did not consist of an individual process, ingredient, or piece of equipment, but rather were the sum total of these things in combination with each other. Thus, the

_____

[4] It is not an uncommon strategy in trade secret cases to focus on discrete components of what in combination constitute the trade secret, in order to diminish the individual components, which viewed in isolation do not qualify for trade secret protection. *See Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1074 (7th Cir.1992) (" 'A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret.' "); *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.,* 114 F.3d 108 (8th Cir.1997); *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.* 2007 WL 1673563, *5 (N.D.Ill.,2007).

question was not whether the four subcomponents constituted *the* trade secrets, but whether they were *part* of them. That question the defendants' skilled counsel sedulously avoided.[5]

There are a variety of strategic reasons why questions are posed in the way they are at a deposition. Some are open-ended and designed to elicit whatever information the witness has. Such was the question that asked Mr. Crouse to list "every single process, technique, and anything else that is missing from [Plaintiff's Identification Of Trade Secrets]." Other questions are designed to obtain a specific and narrow answer the examiner thinks will be helpful either as an admission to be used in summary judgment or as a prior inconsistent statement to be used at trial. The exchange between Mr. Crouse and the defendants' lawyer that preceded the lunch break is an example of this sort of question. The strategy is perfectly sound, so long as the answer provided by the witness legitimately fits the purpose for which it's used. Here it does not.

Following the lunch break, the questions continued to focus atomistically on FFGI's trade secrets. Mr. Crouse's post-lunch answers continued his pre-lunch theme that the trade secrets were a combination of factors. For example:

Q. So is it your testimony that your recommendation to Kevin O'Rourke in 2002 to use a Rheon V4 pre-sheeter, *what you contend to be FFGI's trade secret that misappropriated by Kraft and Little Lady Foods*? ...

A. Tom, it's part of the stress-free process...

---

[5] "Asking imprecise questions... can make the deposition virtually useless at trial either for impeachment or as substantive evidence." Thomas J. MacNamara and Paul Sorensen, *Deposition Traps and Tactics*, 12 LITIGATION 48, 50 (Fall 1985). It was not for Mr. Crouse to expand his answer to accommodate a question that was never asked. It was for the examiner to pose the right questions. Just as "[p]recise questioning is imperative as a predicate for the offence of perjury," *Bronston v. United States*, 409 U.S. 352, 602 (1973). so too is precise questioning imperative if the answer is to have the meaning and effect ascribed to it.

Q. My question to you is: is your trade secret that you are claiming that Kraft and Little Lady Foods misappropriated your recommendation to Little Lady Foods that they use a Rheon V4 pre-sheeter?

A. My trade secret is right in front you, sir. It's part A, part B, part C and part D –

Q. You are not answering my question Mr. Crouse. With regard to the Rheon V4 automated pre-sheeter... is that what you are claiming is your trade secret?

A. Hey, guys, I'm not an attorney. I am saying that our trade secret is part A, B, C, and D of Exhibit 2 [Plaintiff's Identification of Trade Secret], and that combination of those four items.

Q. Is that what you discussed with your attorney during lunch, the combination aspect of this?

(*Crouse Deposition* 79 - 81)(Emphasis supplied).

Q: But the trade secret – what is the secret from everybody else is the fact that you used a stone-hearth oven for the manufacture of a frozen pizza?

A: In conjunction with the other items.

Q: *I understand this is all in conjunction....*

*Id.* at 100 (Emphasis supplied).

Q: As you sit here today, are you still contending that one of FFGI's trade secrets that was misappropriated in this case was your use of a stone-hearth oven?

A: Yes, *but once again as it relates to the other* –

Q: Yes, is fine.

*Id.* at 108 (Emphasis supplied).

Mr. Crouse's deposition concluded on December 13, 2006, more than two months prior to the close of fact discovery on March 1, 2007. The defendants took no further discovery on the additional matters disclosed by Mr. Crouse, nor did they ask for an extension of the discovery closure date to do so.

Where there has been compliance with Rule 26(e)(2), the question of Rule 37 sanctions

14

obviously does not arise. Thus, as to the four components of pre-sheeting identified by Mr. Crouse in his deposition, there is no basis for exclusion. The transcript reveals that the defendants' counsel could not – or at least should not – have been under any misapprehension as to what Mr. Crouse was claiming were components of the trade secrets. As discussed below, the same conclusion, however, does not follow as to the two components that were not discussed by Mr. Crouse (oil tubs and troughs, and the water absorption baker's percentage of 58-62 percent).

The defendants' final argument is that FFGI added the six components in its 2007 answer to interrogatories after looking at the defendants' documentation and determining what components were common between FFGI's methodology and the defendants' processes. Perhaps; perhaps not. But questions of motivation are of no moment in determining whether the information was "otherwise made known during discovery process" within the meaning of Rule 26(e). The validity of the defendants' contention–and the consequences that may ensue from a determination favorable to the defendants – depends on a merits-based inquiry that can only be resolved either in the context of summary judgment or at trial.

**B.**

### Evidence of the Two Additional Components Not Mentioned During Mr. Crouse's Deposition Is Barred From Being Used To Prove The Plaintiff's Trade Secrets

There were two additional components of FFGI's crust-making methodology that the plaintiff specified in writing for the first time in its post-discovery close responses to Kraft's 2007 interrogatories. (1) placing portions of dough into covered, oiled tubs or troughs and (2) water absorption baker's percentage of 58-62 percent. As to the former component, it was never mentioned by Mr. Crouse at his deposition, although it was adverted to in certain of the documents

15

that were provided by FFGI in its response to first set of interrogatories in April 2006. *See supra* at 8. However, references to the use of oiled tubs are only made sporadically in a third of the documents and then in conjunction with other items that, with the benefit of hindsight, we now know are not claimed to be components of the trade secrets. Thus, the Rule 33(d) response did not comply with the Rule and did not satisfy the requirement that for information to be "otherwise made known in the discovery process" under Rule 26(e)(2), the disclosure must be "clear and unambiguous." *See Gutierrez,* 382 F.3d at 733; *Tritek Technologies, Inc.* v. *United States*, 63 Fed. Cl. 740, 748 (2005). Here it was not.

It is significant that by its very terms, the Rule 33(d) response did not provide the information of all the components of the trade secrets. Rather, the answer to Interrogatory Number 2 explicitly stated that "*substantially* all of the specifications for FFGI's product are contained in written directions." (*Motion to Bar*, Ex. H at 2)(Emphasis supplied). What more there was that was not in the documents was left to conjecture and made uncertain, if not impossible, a determination of the entirety of the trade secrets. FFGI knew what its trade secrets consisted of; the defendants did not–at least they did not know what the plaintiff would claim to be the protected information..

Rule 33(d) allows parties to respond to interrogatories by specifying "the records from which the answer may be derived or ascertained" provided that "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served" and that the list of documents is "in sufficient detail to permit the interrogating party to locate and to identify… the records from which the answer may be ascertained." *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 366 (N.D.Ill. 2005). While the plaintiff pointed the defendant to a manageable list of specific documents, as opposed to referring to a category of documents or to its

business records *en masse*,[6] the burden to have ascertained the precise information sought was not substantially the same for the defendants as it was for FFGI. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 366.

In light of the nature of the Rule 33(d) response, it cannot be said that the disclosure was sufficiently "clear and unambiguous" that the "otherwise made known in the discovery process" provision of Rule 26(e)(2) was satisfied as to the oiled tubs or troughs component.

Even if one were to assume that Rule 33(d) was satisfied, "Plaintiff's Identification Of Trade Secrets," coupled with Mr. Crouse's deposition testimony, rendered the Rule 33(d) submission ambiguous. "Plaintiff's Identification Of Trade Secrets" made no mention of the oil tubs and troughs component. Nor did Mr. Crouse at his deposition, despite having been asked to "list...every single process, technique, and anything else that is missing from [Plaintiff's Identification Of Trade Secrets]". (*Crouse Deposition* at 61). Mr. Crouse listed floor time, temperature, use of ice and the absence of dough conditioners. When asked whether further reflection or review of his notes would enable him to provide "further identification of [FFGI's] trade secrets," Mr. Crouse paused and thought and said "I would say I've pretty well hit everything today." (*Crouse Deposition* at 67-68). Given the resulting tension between the "Plaintiff's Identification Of Trade Secrets" and Mr. Crouse's deposition testimony, on the one hand, and the Rule 33(d) response, on the other, it cannot be said that the disclosure of the "oil tubs and troughs" component "was clear and unambiguous." Indeed, Mr. Crouse's testimony, if it did not effectively remove those items as components of the trade secrets, it at least rendered their identification in the documents produced under Rule 33(d)

---

[6] *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 326 (N.D.Ill 2005) ("referring to business records en masse, without specifying particular documents is 'an abuse of the option."

17

ambiguous.

This leaves the water absorption baker's percentage of 58-62 percent component of the trade secrets. This component was never mentioned in Mr. Crouse's deposition – and thus, like the tubs, rendered any reference to the baker's percentage in the documents ambiguous. Moreover, the only reference in the miscellany of documents that FFGI provided in April 2006 in response to LLFI's first set of interrogatories did not specify 58-62%, but referred to a different percentage: "**Summary: Use 60-65% water baker's as required to eliminate dough curling. 62% should work well.**" (Bold face and underlining in original).[7]

Under Rule 37(c)(1), FFGI's failure to have supplemented "Plaintiff's Identification Of Trade Secrets," unless substantially justified or harmless, requires exclusion of the information sought to be used by FFGI. *Westefer v. Snyder*, 422 F.3d 570, 584 n. 21 (7th Cir. 2005); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Williams v. Morton*, 343 F.3d 212, 222 (3d Cir. 2003). The determination of whether a failure is harmless or justified is left to the broad discretion of the district court. *Westefer*, 422 F.3d at 584 n. 21. An exercise of discretion requires a consideration of the factors that inform that exercise, *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir.2007) (Posner, J.), for discretion without a criterion for its exercise is authorization of arbitrariness. *Brown v. Allen,* 344 U.S. 443, 496 (1953) (Frankfurter, J., concurring and dissenting in part). See also *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005); *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 416 (1975). Among the factors relevant here are: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not

---

[7] *See* Bates No. FFGI 00077. *See* n.2, *supra.*

disclosing the evidence at an earlier date. *Westefer*, 422 F.3d at 584 n. 21.

Unlike the four components identified by Mr. Crouse as part of stress-free sheeting at his deposition, information pertaining to the two components not mentioned by him were not otherwise "made known in the discovery process" for the reasons discussed earlier. The prejudice and surprise to the defendants are obvious. Disclosure came after the close of discovery, and as a consequence, the prejudice to the defendants is irremediable, unless discovery is to be reopened with the obvious disruption of the pending summary judgment proceedings.

The question of bad faith is a more difficult inquiry. Discovery in the simplest case is often a matter of fits and starts. In a complicated case like this, omissions in discovery can easily result from oversight and miscommunication. Mistakes are inherent in the human condition. The most gifted of judges make them. *Willy v. Coastal Corp.*, 503 U.S.131, 139 (1992); *Marek v. Chesny*, 473 U.S. 1, 13 (1985)(Rehnquist, J., concurring); *Rodriguez v. Chandler*, _F.3d_, 2007 WL 1932805 at *3 (7th Cir. 2007) (Easterbrook, C.J.); *Olympia Equipments v. Western Union*, 802 F.2d 217, 219 (7th Cir. 1986). So too do the most sophisticated of commercial entities, *Market Street Associates Ltd. Partnership v. Frey*, 941 F.2d 588, 597 (7th Cir. 1991)(Posner, J.), including law firms of the highest caliber. *See e.g., Smoot v. Mazda Motors of America*, 469 F.3d 675 (7th Cir. 2006); *Blue Cross and Blue Shield Assn. v. American Express Co.*, 467 F.3d 634 (7th Cir. 2006); *Kasper v. St. Mary of Nazareth Hospital*, 135 F.3d 1170, 1174, 1177 (7th Cir. 1998).

More importantly, a finding of bad faith, while perhaps a sufficient basis for exclusion, is not a necessary one for exclusion of evidence under Rule 37. *See Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003); *Wolak v. Spucci*, 217 F.3d 157, 161 (2nd Cir. 2000); *Emmpresa Cubana del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159 (S.D.N.Y. 2003).

Such a requirement would be inconsistent with both the text of the Rule. Rule 37 mandates exclusion of evidence where a party has breached its duty to supplement prior disclosures. Nothing in the Rule makes exclusion a function of the intent of the breaching party. And excusing a failure to supplement if the omission is *harmless* is inconsistent with the notion that bad faith is an indispensable component of a Rule 37. Requiring a finding of bad faith would also be inconsistent with the purpose of the Rule, which is the prevention of surprise at trial.

Contrary to the common law's sporting theory of justice, which deemed unseemly the disclosure to an adversary of the evidence to be used at trial, 6 Wigmore, Discovery § 1845 at 490 (3rd Ed.1940), today's attitude towards discovery is vastly different. The Federal Rules of Civil Procedure take as their basic postulate the principle that secrecy is not congenial to truth-seeking, and that by requiring the timely disclosure of relevant information, cases will, so far as possible, be decided on their merits. *See Swierkiewicz,* 534 U.S. at 512; *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 253 (1978) (Powell, J., concurring and dissenting); *Hickman v. Taylor,* 329 U.S. 495, 500 (1947); Rule 1, Federal Rules of Civil Procedure. Where evidence is not timely disclosed, the prejudice to the innocent party and the impact on the integrity of the fact finding process are the same regardless of whether the nondisclosure was intentional or inadvertent, and thus the goals of the Federal Rules of Civil Procedure would be undermined if exclusion of undisclosed evidence depended on the intent of the party failing to make disclosure.

Finally, requiring bad faith as a condition for exclusion of evidence under Rule 37 would impermissibly shift the burden of proof on the exclusion issue from the victim to the party that precipitated the controversy in the first place. As Judge Posner has said, judges have no way of crawling into peoples' minds. Posner, Overcoming Law, 276 (1995). Thus, to require a party to

prove that his adversary had acted in bad faith would be to impose a burden that in the best of circumstances is difficult to sustain, and in the context presented by this case would serve no useful purpose. Moreover, to sustain that burden ought the "innocent" party be accorded some discovery? But that would merely complicate and dilate the case. No longer would the "wrongdoer" be required to prove harmlessness or justification; the burden would now shift to the party without fault to prove a state of mind that in the best if circumstances, even where expansive discovery is available, is difficult. *Cf. Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001).

Whether viewed from the defendants' vantage point or from the perspective of the integrity of the fact-finding process, the prejudice from the late disclosure of the oiled tubs and water absorption baker's percentage of 58-62 percent components is irremediable. The information regarding these two components must be excluded insofar as it may be used to prove FFGI's trade secrets.[8]

This is not to say that the plaintiff is without any responsibility for the difficulties claimed by the defendants. Quite the contrary. FFGI did not make it easy for the defendants when it came to identifying the components of the trade secrets. Instead of simply identifying those components, FFGI provided a list of documents that were claimed to contain the information that was sought. The patchwork of documents was not exactly illuminating and to a large extent required the defendants to guess what the trade secrets were: were they comprised of the many elements mentioned in the more than 30 documents, or only some? The inevitable element of speculation could and should have been avoided. Indeed, ultimately, FFGI, in response to court order, specifically identified its trade secrets. Or at least that is what it was ordered to do.

---

[8] This is the only relief requested by the defendants.

But even then, the identification was "not necessarily complete" – Mr. Crouse's euphemism for incomplete.[9] As Mr. Crouse would later concede at his deposition, the first component of the trade secrets was a "generalization" that should have included, but did not, various subparts. (*Crouse Deposition* at 61). And then, when asked to list "every single process, technique and anything else that is missing from [Plaintiff's Identification Of Trade Secrets]," Mr. Crouse's cheeky response was: "I think that this point in time, Tom, if I had my notes on the subject, I would be much more inclined to answer that question, but it is a complex process.... So perhaps we could save that for tomorrow." (*Crouse Deposition* at 62). Only after the defendants' counsel refused to be put off did Mr. Crouse include floor time, temperature, ice, and the removal of dough conditioners as part of the trade secrets. (*Crouse Deposition* at 62-68).

## C.

### The Second Amended Complaint Did And Cannot Expand The Components Of FFGI's Claimed Trade Secrets

Paragraph 14 of the complaint charged in substance that FFGI had worked with Kraft to develop crusts for its new pizza line, "all the while concealing from FFGI the ongoing and improper use of FFGI's trade secrets." Paragraph 16 concluded by alleging that LLFI in its plant in Gurnee was mass manufacturing pizzas for Kraft "utilizing FFGI's trade secrets." These paragraphs were incorporated into Counts I - III. Paragraph 33 alleged that LLFI promised in its contract with FFGI not to use the latter's "*trade secrets*" to manufacture substantially similar pizzas for anyone but FFGI. Paragraph 37 charged that that promise was breached when LLFI failed to keep FFGI's "*trade*

---

[9] The plaintiff's brief prefers to call its response to my order a "concise explanation of the nature of those secrets," which "set forth their 'core components'...."(*Plaintiff's Opposition* at 4). Of course, my order required a "specific identification" of the trade secrets, not a concise explanation of their nature.

22

*secrets*" confidential and by failing to protect "the proprietary nature of FFGI's *trade secrets*," which it disclosed to Kraft.

Paragraphs 14 and 16 of the Second Amended Complaint substituted the words "crust making methodology" for "trade secrets." Paragraphs 33 and 37 were unchanged. Paragraph 38 was added to the Second Amended Complaint. It charged that LLFI breached its agreement not to produce pizzas with specifications that were in the aggregate substantially identical to FFGI's pizzas by producing pizzas with nearly identical crusts for Kraft. Thus, when the Second Amended Complaint is read in its entirety, it charges breach of contract through misuse of plaintiff's "trade secrets" and "crust-making methodology."

The defendants argue that by substituting the term, "crust making methodology," in paragraphs 14 and 16 of the Second Amended Complaint, for the term, "trade secrets," – and by specifying in answers to Interrogatory Number 2 in April 2007 components of the "methodology" that were not specified as components of the trade secrets in "Plaintiff's Identification Of Trade Secrets," FFGI has insidiously sought to expand the scope of its trade secrets to include information that was revealed only after the close of discovery. If it was FFGI's intent to smuggle into the Second Amended Complaint a definition of trade secrets that encompassed information only made known after discovery, the effort was in vain.

FFGI's response in its Opposition to the Motion to Bar is that the additional components specified in its post-discovery close answer to Interrogatory Number 2 are "part and parcel of the items identified in Plaintiff's Identification Of Trade Secrets" and were "specifically identified in the documents designated in response to Little Lady's interrogatories." (*Opposition to Motion to Bar*

at 8).[10]  Hence, there can be no legitimate claim of surprise to this evidence.  As discussed earlier, all but two of the ten components specified as part of the "crust-making methodology," in response to Interrogatory Number 2 were identified in the "Plaintiff's Identification of Trade Secrets" and/or were discussed by Mr. Crouse at his deposition.  Hence, there is no basis to bar evidence of those four components, regardless of what the plaintiff's real intent was in amending the complaint.

Moreover, the defendants' argument may well be more semantic than substantive.  It is beyond debate that FFGI's "crust-making methodology"consisted of, at least, the various processes and methods that in combination FFGI claimed to be its trade secrets.  Paragraph 3 of the complaint and Second Amended Complaint alleged that FFGI's "unique equipment, specifications, processes, formulations and techniques," "individually and/or in combination," were trade secrets that made possible the unique crust of Stillwell's Stonefired Pizza.  The opening paragraph of "Plaintiff's Identification Of Trade Secrets" stated that it was a "combination of" itemized components or techniques that constituted FFGI's "method" that allowed it to create this unique crust.

Unless language has lost all meaning, a method for making a unique crust is a "crust- making methodology." And since that methodology was defined in a document whose purpose was to *specifically identify* FFGI's "trade secrets," this methodology must be a compendious name for those secrets.  Any other argument would subordinate reality to semantics in violation of the Supreme Court's consistent admonition against precisely this sort of inversion.  *See NLRB v. Seven-Up Bottling Co. of Miami*, 344 U.S. 344, 348 (1953)(We prefer to deal with these realities and to avoid entering into the bog of logomachy, as we are invited to by debate about what is 'remedial' and what

---

[10] That would make "crust making methodology" congruent with the trade secrets—which the plaintiff apparently disputes.  As we shall see, the two are ultimately synonymous, as the plaintiff has indirectly conceded by this argument.

is 'punitive.'"); *DiSanto v. Pennsylvania*, 273 U.S. 34, 43 (1927)("[T]he logic of words should yield to the logic of realities.")(Brandeis, J., dissenting). *See also* Holmes, *Law and Science and Science and Law*, 12 Harv.L.Rev. 443, 460 (1889)("We must think things, not words, or at least we must constantly translate our words into facts for which they stand, if we are to keep to the real and the true.").

Finally, there is the claim that FFGI misrepresented the purpose of the amendment and that its true purpose was to expand the definition of trade secret – as revealed by the inclusion of six items in the response to the interrogatory that asked for the composition of FFGI's "crust-making methodology" that were not included in "Plaintiff's Identification Of Trade Secrets." To what has been said regarding the disclosure during the discovery process may be added this. The motion to amend said that while the complaint alleged breach of contract as a consequence of LLFI's "conveying FFGI's trade secrets to Kraft, the proposed amendment...adds the specific allegation that Little Lady also breached its contractual obligations not to manufacture pizzas that were, in the aggregate, substantially identical to the FFGI pizzas."

FFGI represented that the Second Amended Complaint was designed to serve only this purpose. (Motion to File Second Amended Complaint ¶3; Second Amended Complaint ¶ 38). Immediately following appeared this: "Naturally, *this overlaps somewhat with the existing trade secrets allegations*... but the proposed amendment makes clear that this alleged contractual violation gives rise to *a claim for breach independent of the existence of trade secrets.*" (Emphasis supplied) (Plaintiff's Motion to File Second Amended Complaint ¶3).

The motion concluded with the solemn assurance that the amendment "will likely make no change in any party's proofs or discovery, will not cause undue prejudice to any party and is made

25

solely for the purpose of making clear that the facts as previously alleged state a claim for breach of contract that is independent of plaintiff's trade secret claims." (*Motion to Amend*, ¶6).

When the Second Amended Complaint is read in its entirety – and against the background of Mr. Crouse's deposition – there is nothing that warrants the conclusion that the Second Amended Complaint is a surreptitious attempt to expand the components of FFGI's trade secrets by substituting in two paragraphs the words, "crust-making methodology," for "trade secrets." If that were FFGI's intent, the gambit was unnecessary and coming as it did after discovery closed is unavailing.

Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, it may not thereafter, simply because its interests have changed, assume a contrary position, especially if it be to the prejudice of the party that has acquiesced in the position formerly taken. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)( Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."). *See also* 18 Moore's Federal Practice §134.30, p. 134-62 (3d ed. 2000); *United States* v. *Hook*, 195 F.3d 299, 306 (7th Cir. 1999).

Having persuaded Judge Aspen to allow the filing of the Second Amended Complaint on the representations that were made in the Motion, the doctrine of judicial estoppel precludes FFGI from taking a position inconsistent with those representations either during the summary judgment proceedings or at trial. And of course, Rule 37 prohibits the introduction of any evidence that would expand the components of FFGI's trade secrets beyond the evidence in the "Plaintiff's Identification Of Trade Secrets" or "otherwise made known during the discovery process" through the deposition of Mr. Crouse.

26

**D.**

### The Plaintiff Is Not Entitled To Attorney's Fees
### Incurred In Opposing The Instant Motion

FFGI's opposition to the instant motion concluded by requesting reimbursement for reasonable expenses incurred in opposing the motion, including attorneys' fees, pursuant to Rule 37(a)(4)(B), because the bringing of the defendants' motion was not substantially justified. This request is untenable for two reasons. First, it cannot be said that the motion ought not to have been brought and that the outcome was so preordained that an award of fees is appropriate.

Second, Rule 37(a)(4), on which the plaintiff relies, does not authorize the granting of fees to FFGI. Rule 37(a)(4) deals with motions to compel discovery and disclosure and allows for parties opposing such motions to be granted attorney's fees if the motion is denied. The instant motion is not one to compel discovery. This leaves Rule 37(c)(1), on which the plaintiff does not rely, but which does deal with motions to bar evidence because of a failure to disclose or amend. It only provides for sanctions and fees to be granted to the moving party in the event that the motion is granted. Nothing in Rule 37 authorizes an award of attorneys' fees to a party opposing a motion to bar evidence. The Federal Rules of Civil Procedure are to be accorded "their plain meaning ... and generally with them, as with the statute, '[w]hen we find the terms ... unambiguous, judicial inquiry is complete....' " *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123 (1989).

### CONCLUSION

For the foregoing reasons, the defendants' motion to bar pursuant to Rule 37 [#136] is GRANTED in part and DENIED in part. The plaintiff is barred from introducing evidence in support of its trade secrets allegations of any information not identified in "Plaintiff's Identification

27

of Trade Secrets" or not otherwise made known to the defendants in the Crouse deposition. Evidence of utilization of ice in the dough formula, targeting a post-mixture temperature specification of 68-72 degrees Fahrenheit, ambient floor time of 90-120 minute, and elimination of artificial dough conditioners, having otherwise been made known during the discovery process, may be used. The plaintiff's request for attorney's fees is DENIED.

ENTERED:_____

MAGISTRATE JUDGE JEFFREY COLE

DATE: 7/26/07